UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


DAVID BOOTH,

               Plaintiff

        v.                            C–1–03–660

ROADWAY EXPRESS, INC., *et al.*,

               Defendants


## ORDER

This matter is before the Court upon the Report and Recommendation of the United States Magistrate Judge (doc. no. 39), plaintiffs' objections (doc.  no. 43) and defendant Roadway Express, Inc.'s response (doc. no. 44).  The Magistrate Judge recommended that defendant's Motion for Summary Judgment be granted, plaintiff's Motion for Summary Judgment be denied and the matter be terminated on the docket of this Court.

Plaintiff objects to the Judge's Report and Recommendation on the grounds that his findings are contrary to law.

2

Specifically, the plaintiff objects to the finding of the Magistrate Judge that there is no genuine issue whether the plaintiff failed to give timely and sufficient notice of a possible serious health condition, to his recommendation to grant defendant's Motion for Summary Judgment and to terminate this case. Plaintiff argues that the Magistrate Judge misconstrued the law set out in the Family Medical Leave Act and failed to give all reasonable inferences from the facts to the plaintiff.

The Report and Recommendation (doc. no. 39) is set forth in its entirety.

## REPORT AND RECOMMENDATION

Plaintiff David Booth brings this action against his former employer[1] alleging that defendant Roadway Express, Inc. terminated his employment in violation of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et. seq.* Plaintiff's amended complaint alleges he missed approximately 18 days of work between February and May, 2002 because of severe depression and anxiety which is a "serious health condition" under the Family Medical Leave Act. Plaintiff further alleges that his condition was well known to defendant and that defendant violated the FMLA by terminating plaintiff because of his absences while on covered medical leave. (Doc. 23 at ¶¶5–6). This matter is before the Court on defendant's motion for summary judgment (Doc. 30), plaintiff's motion for summary judgment on the issue of liability (Doc. 31), defendant's memorandum in opposition to plaintiff's motion for

---

[1]      Defendant Teamsters Local 100 has previously been dismissed. (Doc. 20).

summary judgment (Doc. 32), plaintiff's memorandum in opposition to defendant's motion for summary judgment (Doc. 33), plaintiff's reply memorandum in support of his motion for summary judgment (Doc. 34), and defendant's reply memorandum in support of its motion for summary judgment. (Doc. 35).

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323.

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). Conclusory allegations, however, are not sufficient to defeat a properly

supported summary judgement motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990).  The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies.  *Karnes v. Runyon*, 912 F. Supp. 280, 283 (S.D. Ohio 1995)(Spiegel, J.).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50.  In so doing, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes*, 912 F. Supp. at 283.  *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988).  The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 249-50.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a *prima facie* case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## FACTS

Plaintiff began his employment with defendant Roadway, an interstate motor freight carrier, in 1986 as a laborer.  In 1992, he became a full employee and was employed as a dock worker.  Plaintiff was represented by Teamsters Local 100 (the Union) for collective bargaining purposes and was covered by a collective bargaining agreement known as the National Master Freight Agreement (NMFA). (Doc. 30, Exh. B).  Pursuant to the NMFA and a supplemental agreement thereto, upon an employee's return to work following an illness or injury, the employee is required to provide defendant with a doctor's statement substantiating the illness or injury. *Id.*  A separate provision contains a nine–month limitation on prior discipline that can be used in subsequent discipline. *Id.*

Plaintiff has been diagnosed with clinical depression and has been treated for this condition since prior to February 2002. (Doc. 33, Exh. A, Affidavit of Dr. Del Burchell).  Dr. Burchell, who has treated plaintiff since the first part of February 2002, reports that one of the indicators of clinical depression is a display of mild to severe deviation from normal routines that at times can be obvious to friends and family and, in some cases, bizarre. (Doc. 33, Exh. A, ¶4).  Dr. Burchell states that some of the other indicators of clinical depression are insomnia, mood swings, and depression. (Doc. 33, Exh. A, ¶5).  He reports that plaintiff has complained of depression and severe insomnia and has been prescribed Effexor for this condition prior to January 2002. (Doc. 33, Exh. A, ¶6).

6

During the pertinent nine–month period prior to his termination on August 30, 2002, plaintiff was absent from work, tardy, and charged with two incidents of insubordination.

On February 2 and 3, 2002, plaintiff reportedly missed work because of a "twisted ankle." (Doc. 30, Exh. D).  Plaintiff testified that his ankle injury had nothing to do with his depression. (Booth Depo. at 91-92).  On February 13, 2002, defendant issued a warning letter to plaintiff for his failure to report to work on those days. *Id.*

On March 2 and 3, 2002, plaintiff missed work because of lower back pain. (Booth Depo. at 92-94, Exh. 2).  He did not recall the nature of his condition or the treatment received.  *Id.*  Plaintiff produced no doctor's note for any of these absences.  He received a warning letter from defendant concerning these absences. (Booth Depo. Exh. 2).

On March 7, 2002, defendant issued another warning letter to plaintiff for attendance.  Plaintiff called in late because he overslept.  His request to report late to work was denied. (Booth Depo. at 96-99, Exh. 3).  Plaintiff did not recall the reason he overslept. (Booth Depo. at 99).

On March 15, 2002, plaintiff again missed work and was issued another warning letter. (Booth Depo. at 107-109, Exh. 4).  Plaintiff called in late to report off for the 4:00 a.m. shift. *Id.*  Plaintiff reported "I have a note from my doctor that will explain the details as much as needed." *Id.*   However, at his deposition,

7

plaintiff was unable to recall the reason why he was unable to report for his shift, was not sure whether or not he had the referenced doctor's note, and was not sure whether he provided any doctor note to defendant in regard to this absence. (Booth Depo. at 109–110).

Plaintiff missed four days of work on March 21 through March 24, 2002. (Booth Depo. at 110–115, Exh. 5).  Plaintiff reported he had not slept in a couple of days and "I don't know how I'll be able to make it in." *Id.*  He also reported he was sick, and going to see the doctor. *Id.*  It was later reported that the doctor "got him off until Mon." *Id.*  When he was issued a warning letter for his absences, plaintiff protested that he had "a note from his doctor that will explain the details as much as needed." *Id.*  Plaintiff testified that he felt the company had a right to ask his doctor for information, but declined to do so. (Booth Depo. at 115). Plaintiff did not recall submitting a doctor's note to defendant for this absence. *Id.*

Defendant submits that the only medical treatment or examination plaintiff received in March 2002 was on March 22 for a diagnostic testicular ultrasound examination. (Doc. 30, Exh. E; Doc. 36, filed under seal).  Plaintiff was diagnosed with an epididymal cyst, a benign condition.  Following the outpatient procedure, plaintiff was advised not to return to work that day and the only other work restriction was not to lift more than 10 pounds for three days.  His only medication was over-the-counter Motrin. (Doc. 36).

On March 30 and 31, 2002, plaintiff received warning letters for being tardy. (Booth Depo. at 116–17, Exh. 6).  Plaintiff did not report a reason for his tardiness, nor did he recall why he was tardy on those dates. *Id.*

On April 20 and 21, 2002, plaintiff reported off due to "a personal injury to his wrist" and that he would be seeing a doctor. (Booth Depo. at 118–124, Exh. 7). At his deposition, plaintiff could not recall sustaining a wrist injury at that time or receiving treatment. (Booth Depo. at 120).  He did not recall having provided a doctor's note to defendant for this absence. (Booth Depo. at 123).

On May 1, 2002, plaintiff signed for a certified letter from defendant advising him of a May 15, 2002 disciplinary hearing due to his attendance and overall work record. (Booth Depo. Exh. 8).

On May 5, 2002, plaintiff was issued a warning letter for abuse of company time for making a personal phone call during work time. (Booth Depo. Exh. 9). Plaintiff denied being abusive or threatening as reported by his supervisor. (Booth Depo. at 129–145).

Plaintiff testified that sometime in May 2002, he told Dan Jackson, the Assistant Terminal Manager, that he was taking anti–depressant medication and was trying to wean himself off this medication. (Booth Depo. at 75–76, 81–83).

Plaintiff was issued warning letters for May 10, 11, and 12, 2002 for failing to show up for work. (Booth Depo. at 146–149, Exh. 10).  Plaintiff testified at his deposition that he was unable to recall why he did not show up for work on those days. (Booth Depo. at 146–149).  Defendant presents an internal email from Michael Rosczuk, the Terminal Operations Manager  at Cincinnati, which indicates that plaintiff spoke with Donna Marcum who took a message from him on May 9, 2002, indicating he wanted off on May 10 and 11. (Booth Depo. Exh. 10). Defendant's email indicates that it was for "marital problems and he didn't want anybody to know about it." *Id*.  At his deposition, plaintiff denied ever advising anyone at the company that he was having marital problems serious enough to require time off from work. (Booth Depo. at 149–50).  Plaintiff now states what he "actually told Ms. Marcum was that he was having *mental* and emotional problems" and that apparently the message got garbled in the translation. (Doc. 33 at 4, emphasis in the original).  He states he "didn't want anyone to know about his 'mental and emotional' problems" and "was ashamed and embarrassed to admit them." (Doc. 33, Booth Aff. ¶3).  In response, defendant submits the declaration of Ms. Marcum, who confirms defendant's records that plaintiff's absence on May 10, 2002 was reportedly due to marital, not mental problems. (Doc. 35, Exh. 1).

When asked to explain the meaning of his comment "will explain if & when need to" appearing on the employee comment section of the warning letters, plaintiff testified:

10

A.    I had been having physical problems and what might be considered mental problems, emotional problems.  I had told Roadway over and over that I was being treated for these problems and if they had any questions to please ask my physician and he would give them whatever information that they needed.

Q.    Well, you said that you had told Roadway over and over that you were being treated for mental problems?

A.    No.  I was worried about my physical well-being and some people might consider it mental and emotional problems.  I was going-I was having extreme problems with insomnia and problems with anxiety and I was breaking down essentially, and I had wrote on warning letters that we have already looked at that I was being seen for these problems and I asked Roadway that if they needed to have any information from my doctor that it would be provided if they asked for it.

(Booth Depo. at 151-52).  As an example, plaintiff referred to Exhibit 5 of his deposition wherein he reported that "I haven't slept in a couple of days.  I don't know how I'll be able to make it in." (Booth Depo. at 152).  Plaintiff testified that on that on the letter he wrote, "I have a note from my doctor that will explain the details as much as needed." *Id.*  Plaintiff testified, "I was essentially saying to Roadway, 'If you have to know anything more about what's happening to me,' because I really didn't understand what was going on with myself, that they could contact my doctor . . . or I would get information to them as best I could from my doctor." *Id.*

11

On May 19, 2002, plaintiff was issued a warning letter for missing work because of attending a wedding. (Booth Depo. Exh. 11). Plaintiff testified this absence was previously approved by his supervisor and the warning letter was unwarranted. (Booth Depo. at 154–56).

Plaintiff's May 15, 2002 disciplinary hearing was rescheduled for May 22, 2002. Shortly before the meeting was to begin, plaintiff entered the hearing room and was introduced to his union representative. He testified that at that point, he began having a panic attack, left the room, left the company's premises, and went to the doctor's office. (Booth Depo. at 170–73). When he left work early on May 22, 2002, plaintiff did not tell anyone he was having a panic attack or that he was sick. *Id.* Defendant treated plaintiff's walking off the job as a voluntary quit. (Booth Depo. Exh. 12).

On May 28, 2002, plaintiff, through the union, provided defendant with two notes from his doctor's office, both from the Internal Medicine Associates of Northern Kentucky. (Booth Depo. Exh. 14; Doc. 30, Exh. E). One notes states that plaintiff "has been under our care from 1/17/01 to the present." *Id.* The other note states that plaintiff was "off work 5/22 – 5/23/02." *Id.*

Plaintiff filed a grievance over the company's determination that he voluntarily quit his job. (Doc. 30, Exh. F). At the June 7, 2002 hearing on the grievance, plaintiff advised the joint grievance committee of the problems he was experiencing with insomnia, fatigue, and anxiety and with his depression

12

medication. (Booth Depo. at 176–79, 184–86; Doc. 33, Exh. C). At the hearing, Dan Jackson, the Assistant Terminal Manager, admitted he knew prior to the hearing that plaintiff was on antidepressant medication because plaintiff had advised him. (Doc. 33, Exh. C at 17). Plaintiff was advised to provide the company with documentation if he was ever unable to work due to medical reasons. (Booth Depo. at 186, Exh. 15). The grievance committee reduced the quit to an 11–day suspension. (Booth Depo. Exh. 15).

On June 11, 2002, plaintiff was issued a warning letter for being tardy to work. (Booth Depo. at 189–193, Exh. 16). Plaintiff explained he was stuck in traffic. *Id.*

On July 2 and 3, 2002, plaintiff missed work "due to an eye injury." (Booth Depo. Exh. 18). Plaintiff testified that when he initially called in to report off work, he advised the supervisor on duty of his eye injury, but the supervisor refused to accept the excuse. (Booth Depo. at 194–95). When pressed, plaintiff asked the supervisor, "what do you want me to say, I am having a big 4th of July party?" (Booth Depo. at 194). The reason documented on the absence report was "big 4th of July party." (Booth Depo. Exh. 17). Plaintiff produced a doctor's note indicating he had missed work on July 2 and 3 "due to eye injury" at his August 30, 2002 disciplinary hearing. (Booth Depo. Exh. 18).

13

On July 17, 2002, plaintiff was disciplined for insubordination. (Booth Depo. at 212–214, Exh. 19, 20). The incident involved a confrontation with a Terminal Operations Manager (TOM) during a pre-shift meeting. The TOM was allegedly discussing plaintiff's family while he was at work contrary to plaintiff's wishes. Plaintiff's recollection of the confrontation differs from that recorded on the investigative report. (Booth Depo. at 214–233, Exh. 20).

On July 30, 2002, plaintiff received another warning letter for being absent from work reportedly due to a need to babysit his children. (Booth Depo. Exh. 21). The report indicates he had to leave work early to watch two of his children while his wife took his third child to the hospital. *Id.* Plaintiff testified he had no recollection of the event. (Booth Depo. at 234–36).

On August 15, 2002, plaintiff was issued a warning letter due to an absence from work reported to be an "act of God." Plaintiff explained there was a traffic accident on the interstate which prevented him from getting to work within the allotted time frame. (Booth Depo. at 236–37, Exh. 22).

On August 20, 2002, plaintiff was 15 minutes late for work and received a warning letter for being tardy. (Booth Depo. at 237–39, Exh. 23). Plaintiff reported that he had been in a traffic jam. *Id.*

14

On August 30, 2002, a hearing was held on plaintiff's attendance and overall work record for the previous nine months in accordance with the NMFA.  At the conclusion of the hearing, at which both plaintiff and his union representative were present, defendant discharged plaintiff. (Booth Depo. Exh. 26).  Plaintiff was permitted to continue working subject to the grievance procedure.  When plaintiff failed to file a grievance over his discharge by September 9, 2002, ten days following his notice of discharge, he was not permitted to work when he reported for work on September 9, 2002. (Booth Depo. at 260-61).  Plaintiff then filed a grievance over defendant's refusal to allow him to work on September 9. (Booth Depo. Exh. 28).  Plaintiff's grievance was heard before the Ohio Joint State Grievance Committee on November 14, 2002.  The Committee ruled that he had not timely grieved his August 30, 2002 discharge and declined to review the merits of the discharge or the grievance. (Booth Depo. at 264-72).

On May 13, 2003, plaintiff commenced an action against defendant in the Common Pleas Court of Hamilton County, Ohio. (Doc. 1).  Defendant removed the action to federal court pursuant to 28 U.S.C. § 1441. *Id.*  Plaintiff filed an amended complaint on September 20, 2004, alleging a claim under the FMLA. (Doc. 23, ¶6).  The parties have filed cross-motions for summary judgment which are now ripe for adjudication.

15

## THE FAMILY MEDICAL LEAVE ACT

In 1993, Congress passed the FMLA to address the problem of "inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a). The Act provides that an eligible employee is entitled to a total of twelve work weeks of leave during any twelve-month period because of a serious health condition that renders the employee unable to perform his or her job functions. 29 U.S.C. § 2612(a)(1)(D). The Act defines "serious health condition" as an illness, injury, impairment, or physical or mental condition that requires inpatient hospital care or continuing treatment by a health care provider. 29 U.S.C. § 2611(11). To be eligible for coverage under the Act, the employee must have been employed by a covered employer for at least twelve months and for at least 1,250 hours of service during the previous twelve months. 29 U.S.C. § 2611(2)(A). Furthermore, it is unlawful for an employer to interfere with, restrain, or deny the use or attempted use of an employee's right to medical leave. 29 U.S.C. § 2615(a)(1); 29 C.F.R. § 825.220(a). Plaintiff asserts a claim for interference with rights under the FMLA. (Doc. 23, ¶6; Doc. 31 at 4). In order to maintain an FMLA claim for interference with rights, plaintiff must demonstrate the following five elements: (1) he was an eligible employee; (2) the defendant is an employer; (3) he was entitled to leave under the FMLA; (4) he gave the employer notice of his intention to take leave; and (5) the

16

employer denied him FMLA benefits to which he was entitled.  *Cavin v. Honda of America Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).

It is undisputed that plaintiff is an employee[2] and defendant is an employer under the FMLA.[3]  For purposes of the motions for summary judgment, defendant does not dispute that the depression from which plaintiff suffers and for which he received treatment constitutes a serious medical condition under the FMLA. (Doc. 30 at 12, n.5).  However, defendant argues that it was never required to make a determination whether any absences were covered by the FMLA because plaintiff failed to put defendant on timely and sufficient notice of a possible serious health condition that was FMLA-qualifying.  Plaintiff asserts he gave sufficient notice to defendant because he informed defendant of the seriousness of his condition, and defendant had a duty to inquire and tell plaintiff that he was eligible for family medical leave. (Doc. 31 at 7).  Thus, the critical determination for the Court is whether plaintiff provided defendant with sufficient notice that his absences might qualify under FMLA.[4]

---

[2]      An "eligible employee" is defined in § 2611 as "an employee who has been employed for at least 12 months by the employer with respect to whom leave is requested...." 29 U.S.C. § 2611(2)(A)(i).

[3]      Employers covered by the FMLA include those which "engage in commerce or in any industry or activity affecting commerce [which] employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year."  29 U.S.C. § 2611(4)(A).

[4]      The question of whether the notice given by the employee is sufficiently reasonable to give the employer notice as required by the FMLA is a question of law for the Court on summary judgment. *Cavin*, 346 F.3d at 723.

17

"[T]o invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave." *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998). An employee need not expressly mention the FMLA by name when requesting leave, but rather must give the employer "enough information for the employer to reasonably conclude that an event described in the FMLA § [2612(a)(1)] has occurred." *Cavin*, 346 F.3d at 724. "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Brohm*, 149 F.3d at 523 (quotation omitted). There are no hard and fast rules governing the content of the required notice. Instead, "[w]hat is practicable, both in terms of the timing of the notice and its content, will depend upon the facts and circumstances of each individual case." *Cavin*, 346 F.3d at 724, quoting *Manuel v. Westlake Polymers Corp.,* 66 F.3d 758, 764 (5th Cir. 1995).

In his motion for summary judgment, plaintiff argues that "as early as May of 2002" he told defendant of his severe depression which caused his days off work. (Doc. 31 at 9). Plaintiff cites to his deposition testimony that he verbally advised Dan Jackson sometime in May of 2002 that he was having "problems with [his] physical well-being" and that he was having problems being weaned off Effexor, an anti-depression medication. (Booth depo. at 74-76). Plaintiff then argues that at his June 7, 2002 grievance hearing, he again informed defendant of his serious medical condition, advising defendant that he was experiencing

insomnia, fatigue, and anxiety, and that he was taking anti-depression medication. (Booth Depo. at 176-79, 184-86; Doc. 33, Exh. C).

The Court finds, as a matter of law, that plaintiff has failed to show he gave defendant sufficient information to conclude that his absences from work from February 2002 through May 2002 were due to severe depression and anxiety which prevented him from doing his job. Plaintiff fails to provide any evidence showing he notified defendant of the connection between his depression or anxiety and his absences on February 2 and 3, 2002 (ankle injury), March 3 and 4 (lower back pain), March 7 (overslept), March 30 and 31 (no reason given for being tardy), April 20 and 21 (wrist injury), and May 19 (wedding attendance). None of the reasons given for his absences or tardiness are sufficient to reasonably apprise defendant that plaintiff needed time off because of his depressive condition. To the extent plaintiff argues, without any evidentiary support, that his depression caused him to oversleep or exacerbated his pain as it concerns his other physical ailments, he admits no one from Roadway was informed of his depression at least until May 2002 when he advised Mr. Jackson of his problems with his prescription medication. Therefore, there was no way for defendant to reasonably infer any connection between his depression and the request to take leave for the absences pre-dating May 2002.

19

Plaintiff also asserts his absence from work on March 15, 2002 was covered by the FMLA.  While plaintiff gave no reason for this absence, he stated he had a note from his doctor "that will explain the details as much as needed." (Booth Depo., Exh. 4).  Plaintiff contends that this information was sufficient to put defendant on notice that an FMLA claim was potentially present and that under 29 C.F.R. § 825.303(b) defendant was obligated to make further inquiries into plaintiff's absence.

Section 825.303(b), which concerns unforeseeable needs for FMLA leave, states, in pertinent part: "The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means." 29 C.F.R. § 825.303(b).  The regulations further provide, however, that "[a]n employee giving notice of the need for unpaid FMLA leave must explain the reasons for the needed leave so as to allow the employer to determine that the leave qualifies under the Act." 29 C.F.R. § 825.208(a).  Courts have required an employee to provide "some indication that the requested leave is potentially covered by the FMLA." *Brock v. United Grinding Technologies, Inc.*, 257 F. Supp.2d 1089, 1100 (S.D. Ohio 2003).  Adequate notice requires more than a mere profession of "sickness" or "illness." *Brock*, 257 F. Supp.2d at 1100–1101. *See also Collins v. NTN–Bower Corp.*, 272 F.3d 1006 (7th Cir. 2001); *Satterfield v. Wal–Mart Stores, Inc.*, 135 F.3d 973 (5th Cir. 1998).  "To interpret the FMLA in

such a way that the employer must investigate an employee's leave whenever it is informed that the employee is 'ill' or 'sick' would certainly create a burden on the employer that Congress did not intend." *Brock*, 257 F. Supp.2d at 1100.  The employee must provide the employer with "some information about the medical condition at issue." *Id.* at 1101, citing *Spangler v. Federal Home Loan Bank of Des Moines*, 278 F.3d 847 (8th Cir. 2002).  Once the employee furnishes this information, the burden then shifts to the employer to obtain any additional required information through informal means. 29 C.F.R. § 825.303(b).

In this case, nothing in plaintiff's statement, "I have a note from my doctor that will explain the details as much as needed" (Booth Depo., Exh. 4), implies in itself that plaintiff suffered from a serious health condition that may be FMLA-qualifying.  There is no evidence that he in fact saw a doctor on that date, or any evidence concerning the condition or illness for which he may have been treated. There are countless reasons a person may see a doctor, and not every visit to the doctor implies a person suffers from a serious medical condition which may qualify for FMLA leave.  For example, a visit to the doctor for a routine physical examination is not considered "treatment" for purposes of FMLA leave.  *See* 29 C.F.R. § 825.114(b).  Moreover, plaintiff had previously missed work for a variety of health-related reasons prior to this date, including an ankle injury (February 2 and 3, 2002), low back pain (March 3 and 4), and a wrist injury (April 20 and 21). Thus, to say he has a note from a doctor without any further explanation for the

reason he missed work does not reasonably suggest his absence was due to a serious medical condition. *See Brock v. United Grinding Technologies, Inc.*, 257 F. Supp.2d 1089, 1102 (S.D. Ohio 2003). *See also Brenneman v. Medcentral Health System*, 366 F.3d 412, 423 n. 9 (6th Cir. 2004)("plaintiff's bare statement that he was unwell would not have reasonably apprised defendant that his absence was FMLA-qualifying, given plaintiff's long history of diverse physical maladies. . . .").

While plaintiff's motion for summary judgment states he first notified defendant of his depression in May 2002, in his memorandum opposing defendant's motion for summary judgment plaintiff asserts yet an earlier date: March 21, 2002. (Doc. 33 at 10). On that date, plaintiff reported, "I haven't slept in a couple of days. I don't know how I'll be able to make it in." (Booth Depo., Exh. 5). On March 22, plaintiff reported to defendant, "I'm sick. Going to doctor Friday. Will know more after doctor visit." (Booth Depo., Exh. 5). Defendant states in its write up of plaintiff dated March 22, 2002: "Dr. got him off until Mon." *Id*. On March 28, 2002, in response to the warning letter issued, plaintiff commented, "Under Protest. I have a note from my doctor that will explain the details as much as needed." *Id*. Plaintiff argues that his communications during this period sufficiently put defendant on notice that FMLA was "in the picture." (Doc. 33 at 10–11). Plaintiff further contends that because he gave defendant notice he had been off work under a physician's care for "more than three days" he fulfilled the FMLA

22

notice requirement and was statutorily entitled to leave, citing 29 C.F.R. § 825.114(a)(2)(i) and *Price v. Fort Wayne*, 117 F.3d 1022 (7th Cir. 1996). (Doc. 33 at 10).

Contrary to plaintiff's suggestion, the regulation cited does not provide that notification or information that an employee has been off work for more than three days under a doctor's care fulfills the FMLA notice requirement. Rather, the regulation cited defines a "serious health condition" under the FMLA to include a period of incapacity of more than three consecutive calendar days when other conditions are satisfied:

> A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
> (i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of *more than three consecutive calendar days,* ***and*** *any subsequent treatment or period of incapacity* _relating to the same condition_, *that also involves*:
> (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(a)(2)(i)(emphasis added). The fact that plaintiff was off work for more than three consecutive days does not, in itself, imply a serious health condition, *see Bradley v. Mary Rutan Hospital Assoc.*, 322 F. Supp.2d 926, 942 (S.D. Ohio 2004), and, as pointed out in defendant's reply memorandum (Doc. 35 at 6–7), plaintiff fails to present any evidence linking this particular absence with

23

his depression and treatment therefor. Nor is there evidence that plaintiff received further treatment or period of incapacity for the benign cyst as required under section 825.114(a)(2)(i) to constitute a "serious health condition." The only evidence before the Court showing treatment or examination in March 2002 was on March 22 for an outpatient diagnostic testicular ultrasound examination which revealed a benign cyst for which plaintiff was prescribed over-the-counter Motrin.[5] While plaintiff submits the affidavit of his treating doctor, the doctor does not comment on the reasons for the March 21-24 absences, and his office notes reference only the March 22 ultrasound and no other treatment. Plaintiff has not shown the March 21-24 absences were related to the serious health condition for which he brings this lawsuit, *i.e.*, depression, or for any other serious medical condition. *See* 29 C.F.R. § 825.114(a)(2).

Furthermore, *Price v. Fort Wayne*, 117 F.3d 1022 (7th Cir. 1996), cited by plaintiff, is distinguishable. The employee in *Price*, prior to actually taking leave, completed a City-provided leave request form identifying the cause of her leave as a "medical need" and attached a doctor's note excusing her from work for a three week period. 117 F.3d at 1025. The Seventh Circuit found this information sufficient to put the City on notice that this was a possible FMLA leave situation. *Id.* In contrast, plaintiff here provided no advance notice of his intent to take leave

---

[5] "A regimen of continuing treatment that includes the taking of over-the-counter medications such as aspirin, antihistamines, or salves; or bed-rest, drinking fluids, exercise, and other similar activities that can be initiated without a visit to a health care provider, is not, by itself, sufficient to constitute a regimen of continuing treatment for purposes of FMLA leave." 29 C.F.R. § 825.114(b).

and no doctor's note either before or after his absences. Nor did he reveal his doctor's visit was actually for a diagnostic test which revealed a benign cyst or that he could return to work with a lifting restriction the day after the test. Rather, plaintiff reported he was sick, could not sleep, and that his doctor had him off work for a couple of days. This information was insufficient to put defendant on notice of a possible FMLA leave situation.

Plaintiff further argues that once he provided the above information concerning his March 21-24 absences, defendant was equitably estopped from making any warnings or claiming work violations for absences or tardiness that in any way could be tied to his serious health condition, citing *Kosakow v. New Rochelle Radiology Associates*, 274 F.3d 706 (2d Cir. 2001) and *Sorrell v. Rinker Materials Corp.*, 2005 U.S. App. LEXIS 741 (6th Cir. Jan. 14, 2005). Plaintiff contends defendant was under a duty at that point to inform plaintiff of his rights under the FMLA and request plaintiff's physician's records.

Plaintiff's estoppel argument is without merit. In *Kosakow*, the employer remained silent when the employee announced she planned to take medical leave, effectively misleading the employee into believing she was protected by the FMLA. The Court found the employer's "silence in the face of its legal duty to inform Kosakow of her ineligibility (because she lacked the necessary 1250 hours of eligibility) is properly construed as an affirmative misrepresentation." *Kosakow*, 274 F.3d at 726. *Sorrell*, also cited by plaintiff, never addressed the issue of

25

whether equitable estoppel was applicable.  Here, plaintiff never specifically requested FMLA leave as in *Kosakow*, nor did defendant mislead plaintiff into believing his absences were excused under FMLA.  Therefore, plaintiff cannot claim equitable estoppel under these circumstances.

Next, plaintiff contends his absences from work on May 10, 11, and 12, 2002 were FMLA-qualifying.  Defendant presents evidence that plaintiff called in and requested off because of marital problems. (Booth Depo., Exh. 10).  At his deposition, plaintiff was unable to recall why he did not show up for work those days. (Booth Depo. at 146-149).  Yet, in his memorandum in opposition to defendant's motion for summary judgment, plaintiff presents his affidavit and now says he reported having "mental" and not "marital" problems and opines that the person taking the message must have misunderstood him. (Doc. 33 at 4; Doc. 33, Booth Aff. ¶3).  "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).  Plaintiff cannot present an affidavit which conflicts with his earlier deposition testimony to create an issue of fact in this regard.  Therefore, plaintiff has failed to establish he provided defendant with notice that his absences for May 10, 11, and 12, 2002 were covered by the FMLA.

In summary, plaintiff has failed to present evidence establishing he provided adequate notice to defendant that his absences from work for the 18 days between February and May, 2002 were FMLA-qualifying.

Moreover, plaintiff failed to provide defendant with timely notice of his intent to take leave under the FMLA. When leave is not foreseeable, as in this case, federal regulations require an employee "give notice to the employer of the need for FMLA leave as soon as is practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). Such notice should be given "to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible." *Id.* Here, plaintiff's statement to Assistant Terminal Manager Dan Jackson sometime in May 2002 that plaintiff was trying to wean himself off of anti-depression medication was not accompanied by any further information linking any particular absence to his treatment for depression, nor does plaintiff show such notice was given within one or two days of any such absences.

Likewise, with respect to plaintiff's absence from work on May 22, 2002, when he experienced a panic attack and left work early, plaintiff failed to provide timely notice that he was being treated for anxiety and depression. Plaintiff admits he did not tell anyone he was having a panic attack or that he was sick before he left work. The doctor notes provided, one stating that plaintiff "has been under our care from 1/17/01 to the present" and the other stating that plaintiff

was "off work 5/22 – 5/23/02" (Booth Depo. Exh. 14; Doc. 30, Exh. E), were not provided until May 28, 2002, some six days after plaintiff walked off the job.  On June 7, 2002, when plaintiff advised the grievance committee of his treatment for depression, sixteen days had passed since the incident on May 22.  Such notice is not timely under the FMLA regulations, 29 C.F.R. § 825.303(a), nor has plaintiff alleged any extraordinary circumstances justifying the untimely notice.

Finally, plaintiff's absences subsequent to June 7, 2002 are not alleged to be related to his depression.  Rather, they were due to traffic problems (June 11, 2002; August 15 and 20, 2002),  an eye injury (July 2–3, 2002), insubordination (July 17, 2002), and childcare problems (July 30, 2002).  To the extent the parties argue about whether these absences would constitute just cause under the collective bargaining agreement to support a warning or discharge, the relative merit of such arguments are irrelevant to plaintiff's interference claim under the FMLA.  "Where absences are not attributable to a 'serious health condition,' . . . [the] FMLA is not implicated and does not protect an employee against disciplinary action based upon such absences." *Rankin v. Seagate Technologies, Inc.,* 246 F.3d 1145, 1147 (8th Cir. 2001).  *See also Bachelder v. America West Airlines, Inc.,* 259 F.3d 1112, 1125 (9th Cir.2001)(FMLA "is not implicated and does not protect an employee against disciplinary action based upon [ ] absences" if those absences are not covered by the Act).  As discussed above, plaintiff's FMLA interference claim turns on whether he gave notice to defendant of his intention to take leave.

*Cavin*, 346 F.3d at 719.  Because this Court finds plaintiff failed to give timely and sufficient notice of a possible serious health condition that was FMLA-qualifying, plaintiff fails to establish his interference claim under the FMLA.

**IT IS THEREFORE RECOMMENDED THAT:**

1.  Defendant's motion for summary judgment be granted.

2.  Plaintiff's motion for summary judgment be denied.

3.  This matter be terminated on the docket of the Court.

<u>CONCLUSION</u>

Upon a *de novo* review of the record, especially in light of plaintiff's objections, the Court finds that plaintiff's objections have either been adequately addressed and properly disposed of by the Judge or present no particularized arguments that warrant specific responses by this Court.  The Court finds that the Magistrate Judge has accurately set forth the controlling principles of law and properly applied them to the particular facts of this case and agrees with the Judge.

29

Accordingly, the Court hereby **ADOPTS** the Report and Recommendation of the United States  Magistrate Judge (doc. no. 39).   Defendant's Motion for Summary Judgment (doc. no. 30) is **GRANTED**.  Plaintiff's Motion for Summary Judgment (doc. no. 31) is **DENIED**.

This case is **DISMISSED AND TERMINATED** on the docket of this Court at plaintiff's cost.

**IT IS SO ORDERED.**

s/Herman J. Weber
Herman J. Weber, Senior Judge
United States District Court